UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA MCINTOSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05 C 7044 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Illinois Department of Employment Security ("IDES") for summary judgment in its favor on the complaint of Plaintiff Theresa McIntosh. For the reasons set forth below, the motion is granted.

## BACKGROUND

McIntosh has been employed with IDES since 1974. In 1980, she became an Unemployment Insurance ("UI") Special Agent in the Benefit Payment Control department of IDES. She is also fluent in Spanish; her language skills apparently were

obtained through school.[1] She is African American, and although the parties do not specify where she was born, there is no indication that it was not in the United States.

In January 2003, Patrick James, a former colleague of McIntosh's whom she had trained when he first started with IDES, became her direct supervisor. Charlene McLaughlin was James's supervisor as well as the manager of the department where McIntosh worked. James and McLaughlin are both African American, but neither speaks Spanish.

While she worked in Benefit Payment Control, part of McIntosh's duties included interpreting for Spanish-speaking clients. Because of these additional duties, she was paid more than other UI Special Agents. In March 2003, James made a comment to McIntosh that she made more money than he did and speculated that she was the only Spanish-speaking African American working for the State of Illinois. By all accounts, that began to sour their working relationship, and McIntosh began to look for other positions within IDES.

In early 2004, a supervisor's position opened within a unit other than the one where McIntosh worked. McIntosh did not submit an application for the position, but she contends that it was because the position was filled so quickly that she did not have

---

[1]Though the parties have not offered any evidence on this point, McIntosh referred to her bilingualism in her deposition as her "professional skills." Def.'s Exh. 7, p. 37, ll. 22-24.

an opportunity to apply. The position was given to Marco Morales, a Hispanic man. According to McIntosh, she was more qualified than he. McLaughlin was the person responsible for hiring Morales.

On February 29, 2004, James saw McIntosh away from her desk during the work day and told her to return to her work area. Apparently put off by his tone or demeanor, she responded that he did not have to speak to her in that way, and he wrote her up for insubordination. The write-up was later removed from her file. Relations between the two continued to disintegrate, and in March they agreed after meeting with McLaughlin that they would communicate only via email. Not all interactions occurred over email; on April 6, McIntosh was chatting with a coworker at her desk, and James informed both of them that she could not have company.

In April, McIntosh asked McLaughlin to transfer her to a new unit. According to McLaughlin, she offered McIntosh several different options, none of which McIntosh accepted. Around the same time, McIntosh also applied for the position of assistant manager of the Benefit Payment Control unit. The posting specified that applicants had to have a current qualifying promotional grade from Central Management Services. McIntosh did not have a current promotional grade, and the job went to a white woman, Debbie Davis.

In June, James and McIntosh had two additional run-ins. In the first, he chastised her (via email) for taking an hour and a half for lunch rather than her scheduled hour. He indicated that he would issue an oral reprimand for her behavior, but he never did so. In the second, McIntosh was reading a union book at her desk, and James instructed her to close it. Despite the fact that they had agreed to communicate via email to minimize their face-to-face contact, McIntosh began to take exception to the amount of emails James was sending to her and the time it took her to read them.

In July, McIntosh again requested to transfer to a different unit. McLaughlin informed her that she could not transfer because the positions had not been posted. In 2005, McIntosh applied to be a manager in the IDES office in Evanston. She was interviewed by a man from Springfield named Pete Setter. Setter and two other unidentified people later decided to hire Arthur Clexton, a white man.

In December 2004, James instructed McIntosh to provide him with a list of claimants for whom she had scheduled interviews. She responded that she had not scheduled any, and he requested an explanation. When McIntosh did not explain the lack of interviews, she was issued a written reprimand that was later withdrawn. A few days later, James instructed McIntosh to open all emails he sent to her. She did not comply with this instruction, and James issued a three-day suspension that was later reduced to two days.

In February 2005, McIntosh had a radio at her desk during work hours. James instructed her that she could not play a radio at her station. After intervention from McLaughlin and the union, McIntosh and other employees were permitted to listen to radios at their work stations if it did not disturb their coworkers and did not affect members of the public who were in the office. On April 25, McIntosh filed a charge of sex discrimination with the Illinois Department of Human Rights and the EEOC claiming that James had been harassing her since February of 2003 and specifically alluding to the incident involving the radio.

On May 3, the agency dismissed the charge and issued her a right-to-sue letter. The same day, McIntosh filed another charge, this time alleging that James had harassed her since November 2004 on account of her age and race and in retaliation for complaining about the sex discrimination.[2]

In August, McIntosh filed a third charge, this time citing only retaliation resulting from the April 25 charge as the basis for her claim. She received a right-to-sue letter on that charge around September 20, 2005.

---

[2]The record contains a right-to-sue letter dated February 6, 2006, that bears a different charge number from the May 3 charge, but there is no contention that McIntosh filed a fourth charge or that the EEOC otherwise acted on the May 3 charge within 180 days after it was filed. As a result, we will assume, without deciding, that the February 6 right-to-sue letter corresponds to the May 3, 2005, charge.

In November, James gave McIntosh her annual review. According to her performance evaluation, she was not meeting workplace expectations with respect to completing certain types of cases within 45 days of assignment and scheduling cases for interviews. After she grieved this evaluation, the two entries were changed to indicate that she had met her employer's expectations.

In December 2005, just shy of 90 days after receiving the right-to-sue letter for the August charge, McIntosh filed the instant suit. Her complaint alleged discrimination on the basis of color and disability. She stated that IDES had failed to promote her, that the two-day suspension was in retaliation for complaining about the color and disability discrimination, that she had received emails threatening her employment, and that she had been subjected to unspecified unequal terms of employment.

In February 2006, McIntosh amended her complaint. Her amended complaint alleges discrimination on the basis of color, national origin, and sex as well as unlawful retaliation. It references the negative performance evaluation, the fact that she and James were only to communicate by email, the radio incident, and the disciplinary actions.

In March 2006, McIntosh transferred out of the Benefit Payment Control department into Benefit Accuracy Measurement. Though she is still a UI Special

Agent, she no longer uses her Spanish skills and consequently has lost the additional pay she had received in her former capacity.

IDES moved to dismiss the allegation of sex discrimination because they were not filed within 90 days of McIntosh's receipt of her right-to-sue letter on the charge that set forth that basis. After that motion was granted, discovery proceeded on the remaining allegations. Upon completing discovery, IDES filed the instant motion for summary judgment on the remainder of the complaint.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must identify the specific portions of the total record, which it believes establishes the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule

56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole in a light most favorable to the non-moving party and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). With these principles in mind, we turn to IDES's motion.

## DISCUSSION

**A. Discrimination Claim**

*1. Scope of Claim*

In addition to challenging the merits of McIntosh's claims of discrimination, IDES has presented two arguments that the scope of those claims should be limited in the first instance. First, they contend that she is precluded from seeking relief for incidents occurring before November 4, 2004—the first date included in the charge she

filed on May 3, 2005.  We disagree for two reasons.  First, the language of the charge is not absolute with respect to the November 4 date; rather, McIntosh repeatedly says that discriminatory acts took place since "at least November 4."  Second, it is well settled that Title VII suits can include allegations that are not expressly set forth in an EEOC charge if the additional allegations are reasonably related to those laid out in the charge.  *See*, *e.g.*, *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985). Since events that took place before November 4 could be reasonably related to those occurring afterward, we will not exclude those prior events simply because they predated the starting point McIntosh specified in her EEOC charge.  Since McIntosh has cited only discrete events as foundation for her claim of discrimination, rather than a continuing violation, she is limited to incidents occurring within 300 days before she filed her charge.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10, 122 S. Ct. 2061, 2071 (2002).  As a result, we conclude that the earliest date to which she can look for events to support her discrimination is July 7, 2004, not November 4.

IDES's second scope-related argument insists that McIntosh should be barred from bringing any claim that IDES failed to promote her for unlawful reasons because she did not include any failure-to-promote claims within her EEOC charges.  We agree that the language of her EEOC charges do not mention missed promotional opportunities or the individuals she claims denied her those opportunities.  Because

these new claims cannot be said to be reasonably related to those brought to the attention of the agency and the employer, we will disregard them.

*2. Merits of Claim*

A plaintiff claiming discrimination in violation of Title VII can proceed under either the direct method or the indirect method of establishing the existence of a claim. *See Sun v. Bd. of Trustees of Univ. of Illinois*, 473 F.3d 799, 812 (7th Cir. 2007). A plaintiff using the direct method must set forth actual evidence of discrimination. *See id*.

If a plaintiff has no evidence that the motivation for an employment action was an unlawful one, he or she can still survive summary judgment using the indirect method. *Brewer v. Bd. of Trustees of University of Illinois*, 479 F.3d 908, 915 (7th Cir. 2007). Under that method, a plaintiff such as McIntosh can raise a presumption that her employer acted with discriminatory animus if she can establish four prima facie elements. The elements are 1) she is a member of a protected class; 2) she was meeting her employer's legitimate expectations of her performance on the job; 3) she suffered an adverse employment action; and 4) IDES treated a similarly situated employee who was not in the same protected class more favorably than they treated McIntosh. *See Burks v. Wisconsin Dep't of Transportation*, 464 F.3d 744, 750-51 (7th Cir. 2006). If she can do so, IDES can rebut the presumption of discriminatory motivation by setting

forth a legitimate business reason for taking the actions it did. *See id.* at 751. McIntosh must then establish disputed issues of fact regarding whether the reason advanced is a pretext designed to cover up the true reasons for the action. *See id.* If she cannot, IDES is entitled to summary judgment. *See id.*

Despite having received notice of Local Rule 56.2, which alerts pro se parties of their obligations when responding to a motion for summary judgment, McIntosh failed to file a response to IDES's 56.1 statement of material facts.[3] By operation of the rule, all facts are therefore admitted. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). Her brief in response to IDES's motion and memorandum of law consists of a list of conclusory statements with little to connect them to each other and virtually no evidentiary support. In the few instances where she does make a contention that can be associated with an identifiable piece of evidence, the matter asserted is either demonstrably incorrect or does not bear upon any issue presented in the motion.[4] Though we must give her pro se filing a liberal reading, we cannot assume the role of

---

[3]McIntosh attached a list of descriptions of documents with corresponding dates and remarks to her response, but this neither constitutes admissible evidence nor complies with Local Rule 56.1(b)(3).

[4]For example, McIntosh states that her third charge was dated September 15, 2005. However, the charge clearly indicates that it was filed on August 17, 2005; the corresponding right-to-sue letter was dated September 15. She also refers to a letter attached to her response as support for her assertion that she was instructed to litigate this case without assistance from her union. She does not elucidate how that fact is relevant to the motion at hand.

advocate and locate factual disputes or construct arguments on her behalf. *See Greer v. Bd of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001).

The only direct evidence that McIntosh could avail herself of on her claims of color and national origin discrimination is James's comment in March 2003. That event is outside of the time frame outlined above, but even if it was not, it could not underlie a viable claim of discrimination for two reasons.

With regard to her claim of national origin, we note that, though indicia of national origin often coincide with those for race or color, when such a correlation is absent, other characteristics can support a conclusion that a person would be perceived as originating in a particular nation or culture. *See Harel v. Rutgers, State University*, 5 F. Supp. 2d 246, 269 (D.N.J. 1998). Such characteristics include speaking with a particular accent, using a particular language, or participating in activities associated with identifiable cultural groups. *See id.* Consequently, the fact that a plaintiff's outward appearance does not definitively indicate national origin does not preclude a viable claim for national origin discrimination. *See Lewis v. State of Del. Dep't of Public Instruction*, 948 F. Supp. 352, 360 (D.Del. 1996).[5] However, the attributes that

---

[5]*Lewis* involved a black plaintiff who was born in Panama. *Id.* He spoke both English (with a discernible accent) and Spanish fluently and used his Spanish skills as part of his employment with the defendant. *Id.* Those attributes, in combination with his regular participation in Latino community activities, convinced the court that he had enough outward manifestations of his national origin to establish that he could be

could signal national origin must still correlate with a plaintiff's country of origin or that of his or her ancestors. *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88, 94 S. Ct. 334, 336, 337 (1973); *see also* 29 C.F.R. § 1606.1. Bilingualism alone is not synonymous with national origin, and persons who acquire language skills through methods unrelated to their culture or that of their ancestors are not a protected class under Title VII. McIntosh self-identifies as African American; neither birth in the United States nor African ancestry necessarily coincides with the use of the Spanish language, so she cannot use it as a proxy for her national origin or a springboard for a claim that James took issue with her actual national origin.

Neither is James's statement about McIntosh's pay level evidence that he harbored discriminatory animus toward McIntosh because she was black. By McIntosh's own explanation of his comment, James was upset not because she was black but because she made more money than he did. This is conjecture on her part, but even assuming that it was the impetus for his treatment of her, economically inspired envy is not a motive made unlawful by Title VII. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1058 (7th Cir. 2006). Accordingly, we conclude that McIntosh cannot proceed under the direct method.

---

subject to discrimination on that basis. *Id.*; *see also Perkins v. Lake County Dep't of Util.*, 860 F. Supp. 1262 (N.D. Ohio 1994).

Her claims of discrimination fail under the indirect method as well, since she has not established the fourth element of her prima facie case: a similarly situated employee who is not the same color or who does not have the same national origin that she does who received more favorable treatment. Though the factors that will make one employee similarly situated to another will differ from case to case, *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), there can be no question that the plaintiff must identify comparators and set forth the basis for concluding that the other employee was similarly situated to the plaintiff. *Brewer v. Board of Trustees of University of Illinois*, 479 F.3d 908, 923-24 (7th Cir. 2007). McIntosh's response does neither of these things. Without this information, McIntosh cannot raise a presumption of discrimination under the indirect method, and IDES is accordingly entitled to summary judgment on her claims of discriminatory treatment.

**B. Retaliation Claim**

*1. Scope of Claim*

IDES first contends that McIntosh is limited to asserting claims of retaliation only arising from events occurring after April 25, 2005. They base this contention on McIntosh's failure to file a lawsuit within 90 days of receiving the right-to-sue letter on her first charge, filed on April 25. Any claims alleged in her later charges that occurred during the same time frame as those in her first charge are forfeited by her failure to act

in a timely manner on the first right-to-sue letter. Otherwise, McIntosh could circumvent the 90-day rule, an impermissible outcome. *See Vitello v. Liturgy Training Publs.*, 932 F. Supp. 1093, 1098 (N.D. Ill. 1996). We again note that she is not alleging a continuing violation, so only discrete events occurring after April 25, 2005, can be advanced to support her claim of retaliation.

*2. Merits of Claim*

As is the case for claims of unlawful discrimination, claims of unlawful retaliation can be established using a direct or an indirect method. *See Roney v. Illinois Dep't of Transportation*, 474 F.3d 455, 459 (7th Cir. 2007). A plaintiff using the direct method must provide evidence that she was subject to an adverse action as a result of engaging in a statutorily protected activity. *See id.* Under the indirect method, a plaintiff who does not have direct or circumstantial evidence can raise a presumption that the adverse action resulted because of the protected activity by demonstrating four prima facie elements. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006). They are 1) the plaintiff complained about discrimination, 2) she was subjected to an adverse action, 3) despite her satisfactory job performance, and 4) no other similarly situated employee who did not complain suffered such an action. *See id.*

The deficiencies of McIntosh's response mandate the same outcome for her retaliation claims as for her discrimination claim. Though it is undisputed that she complained about discrimination in filing her EEOC charges and that she experienced things at work that were unpleasant to her, she has offered no evidence that the latter resulted from the former. Neither has she identified a similarly situated employee who did not file a complaint as a point of comparison, even though it is her burden to do so. *See id.* Consequently, she has not raised a presumption that the actions of which she complains stemmed from her discrimination complaints, and IDES is entitled to summary judgment on her retaliation claim as well.

## CONCLUSION

Based on the foregoing, IDES's motion for summary judgment is granted.

Charles P. Kocoras
United States District Judge

Dated: July 2, 2007